736 P.2d 827

**George R. RIPPS and Paula E. Ripps, joint tenants, Plaintiffs/Appellants,**

v.

**CITY OF TUCSON, a municipal corporation, Defendant/Appellee.**

No. 2 CA–CV 5979.

Court of Appeals of Arizona, Division 2, Department B.

April 14, 1987.

Winston & Strawn by Frank S. Bangs, Jr. and Megan E. Miller, Tucson, for plaintiffs/appellants.

Frederick S. Dean, City Atty. by Norbert W. Ludwig, Tucson, for defendant/appellee.

OPINION

LACAGNINA, Judge.

 The sole issue on appeal is the reconciliation of A.R.S. §§ 9–462.01(E) and 462.04(G)[1]. We hold that A.R.S. § 9–462.-

---

1. § 9–462.01
   *    *    *    *    *    *
   E. All zoning ordinances or regulations adopted under this article shall be consistent

with the adopted general and specific plans of the municipality, if any, as adopted under article 6 of this chapter.
§ 9–462.04(G)

04(G) governs the validity and effectiveness of all zoning ordinances where the required number of protests are lodged by adjacent property owners, and we therefore affirm the judgment of the trial court in favor of the City of Tucson.

George R. Ripps and Paula E. Ripps applied to the City of Tucson for rezoning of a parcel of land from SR (suburban ranch) to R–3, a classification that would permit the construction of apartments. The request for R–3 zoning was approved by the City's planning department, zoning examiner and city manager and was consistent with the city's adopted neighborhood and area plans. At a public hearing held pursuant to A.R.S. § 9–462.04(C), the city council received written protests from 20% or more of adjacent neighbors within the 150–foot limit established by the statute. The city council voted 4–3 to adopt the recommended ordinance rezoning Ripps' parcel from SR to R–3. The favorable vote of four of the council members did not comprise three-fourths of the seven-member council.

Ripps argue the superior court should ignore the requirements and effect of § 9–462.04(G) because their requested zoning was consistent with the City's adopted general and specific plans and therefore mandated by § 9–462.01(E).

In *Haines v. City of Phoenix*, 151 Ariz. 286, 727 P.2d 339 (App.1986), we held that by the enactment of § 9–462.01(E) the legislature provided a standard to review zoning decisions in addition to the usual constitutional standard and that standard requires consistency with the general plan. There is no dispute that the Ripps' request for rezoning to R–3 was consistent with the City's adopted general and specific plans.

Nevertheless, by enacting § 9–462.04(G), the legislature clearly intended to allow changes in zoning only upon a three-fourths vote of the city council where a specified percentage of protests are lodged. Under § 9–462.04(G) the final authority for enacting or amending a zoning ordinance is vested in three-fourths of the council members. This statute has been interpreted by the Arizona Supreme Court in *Hyland v. City of Mesa*, 112 Ariz. 66, 537 P.2d 936 (1975):

> Statutes will be interpreted in light of their purpose in being enacted. *City of Tucson v. Tucson Sunshine Climate Club*, 64 Ariz. 1, 164 P.2d 598 (1945). The statute at issue protects the concerned owners of land adjacent to that which is being considered for a change in zoning by demanding that for a change to be effected, three-fourths of the members of the governing body of the municipality approve the amendment. Ordinances which are passed without substantial compliance with the statute are void. *Manning v. Reilly*, 2 Ariz.App. 310, 408 P.2d 414 (1965).

112 Ariz. at 67, 537 P.2d at 937.

■ The plain language of the statute and the reasoning of *Hyland* prevent judicial inquiry into the reasonableness or rationale urged by the protesters and heeded by some members of the council. The establishment of the manner in which a zoning ordinance may validly be adopted is the exclusive function of the legislative branch of government, and to hold otherwise would do violence to the doctrine of separation of powers. *City of Phoenix v. Fehlner*, 90 Ariz. 13, 363 P.2d 607 (1961).

■ In addition, we disagree with Ripps that our holding in this case would prevent us from ever considering constitutional

---

\* \* \* \* \* \*

G. If the owners of twenty per cent or more either of the area of the lots included in a proposed change, or of those immediately adjacent in the rear or any side thereof extending one hundred and fifty feet therefrom, or of those directly opposite thereto extending one hundred and fifty feet from the street frontage of the opposite lots, file a protest in writing against a proposed amendment, it shall not become effective except by the favorable vote of three-fourths of all members of the governing body of the municipality. If any members of the governing body are unable to vote on such a question because of a conflict of interest, then the required number of votes for passage of the question shall be three-fourths of the remaining membership of the governing body, provided that such required number of votes shall in no event be less than a majority of the full membership of the legally established governing body.

**346**

claims. First, no provision of the Arizona or United States Constitutions prohibits a requirement of a three-fourths vote of the council members to amend the ordinance if there are protests. Nor is it constitutionally prohibited for the council members to listen to the protesters' concerns and vote accordingly. However, if the refusal to rezone the property in effect renders the property useless, *see, e.g., Cardon Oil v. City of Phoenix,* 122 Ariz. 102, 593 P.2d 656 (1979), we would properly inquire into the reasonableness or rationale of the protesters' concerns, as heeded by the council members. In this case, however, there are multiple uses for the property, and the effect of the statutory three-fourths vote requirement is to preclude only one specific use.

Nor does the denial of a request to rezone to permit one of several permissible uses violate the consistency required by A.R.S. § 9–462.01(E), because the legislative body has the power to decide which of the multiple uses permitted by a zoning classification it believes best serves the public. In other words, to decide not to permit a specific high density housing project does not mean other high density projects would not be permitted.

The judgment of the trial court in favor of the City of Tucson denying Ripps declaratory and special action relief is affirmed.

LIVERMORE, P.J., and HOWARD, J., concur.